IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-218-FL

| | |
|---|---|
| SHELIA DENISE YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES C. CARTER, an individual; GERALD W. BEAM, an individual; GARLAND C. BEAM, an individual; NIKOLAS KOZEL, an individual; CROSS KEYS LEASING CO., INC., a Virginia Corporation; BEAM BROTHERS TRUCKING, INC., a Virginia Corporation; BEAM BROTHERS HOLDING CORP., INC., a Virginia Corporation; BEAM BROTHERS, LLC NO. 1, a Virginia Corporation; BEAM BROTHERS, LLC NO.2, a Virginia Corporation; and DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (DE 26). Plaintiff responded in opposition, and in this posture, the issues raised are ripe for ruling. For the following reasons, the court grants in part and denies in part defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on May 24, 2019, seeking damages for alleged personal injuries arising from a motor vehicle collision that occurred June 19, 2016. Plaintiff alleges defendant James C. Carter ("Carter") operated a commercial motor vehicle while fatigued, thereby falling asleep while driving, crashing into plaintiff's vehicle, and causing plaintiff severe injury,

all while acting within the course and scope of his employment with defendant Beam Brothers Trucking, Inc ("BBT").

Defendants Gerald W. Beam ("Gerald"), Garland C. Beam ("Garland"), Shaun C. Beam ("Shaun"), and Nikolas Kozel ("Kozel"), purported officers of defendant BBT, are allegedly responsible for encouraging, permitting, causing, or requiring defendant BBT's employees, such as defendant Carter, to drive while impaired with fatigue, in violation of Federal Motor Carrier Safety Administration ("FMCSA") Hours of Service regulations. Plaintiff proceeds on the basis of diversity jurisdiction, asserts claims for negligence, negligent entrustment and retention, and civil conspiracy, and seeks punitive and compensatory damages.

On July 22, 2019, defendants Gerald, Garland, Shaun, and Kozel (collectively "moving defendants") filed the instant motion to dismiss plaintiff's claims against them, arguing plaintiff failed to plead facts sufficient to pierce the corporate veil or assert direct claims against them. Plaintiff responded to the instant motion.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.

At all times relevant herein, defendants Gerald and Garland owned defendant Beam Brothers Holding Corp. Inc., ("BBH"), a Virginia corporation, and defendant BBH was the sole owner of defendant BBT, also a Virginia corporation. (Compl. ¶¶ 61-62). Defendant BBT was managed as follows: 1) defendant Gerald served as chief executive officer and was responsible for ensuring drivers complied with FMCSA safety regulations (Id. ¶ 20); 2) defendant Garland acted as chief operating officer, oversaw operations personnel, including employees who designed and scheduled driving routes, and was a responsible for ensuring drivers complied with FMCSA safety regulations (Id. ¶ 22); 3) defendant Shaun served as operations manager and was responsible for

establishing driving routes and ensuring drivers complied with FMCSA safety regulations (Id. ¶ 24); and 4) defendant Kozel acted as controller and chief financial officer and oversaw all personnel tasked with FMCSA compliance. (Id. ¶ 26). Additionally, defendant BBT employed defendant Carter as a commercial motor vehicle driver. (Id. ¶ 17).

A.     The Motor Vehicle Collision

On June 19, 2016, at or around 2:30 p.m., while acting within the scope of his employment for defendant BBT, defendant Carter was driving a Volvo tractor semi-trailer ("the Volvo"), owned by defendant Cross Keys Leasing Co. Inc. ("Cross Keys"), and pulling an enclosed box trailor owned by defendant BBT, southbound on Interstate 85 ("I-85") in Vance County, North Carolina. (Id. ¶¶ 7, 40-42). At approximately that same time, plaintiff was driving a Honda Civic on I-85 in Vance County, North Carolina, also traveling south. (Id. ¶ 43). As plaintiff proceeded down I-85, she approached stopped traffic, to which she yielded. (Id. ¶ 44). Soon thereafter, defendant Carter fell asleep while driving and crashed into the seven vehicles stopped before him, including plaintiff's Honda Civic. (Id. ¶¶ 47-48).

The collision occurred at such a high rate of speed that defendant Carter "cleared the first three cars off of I-85, causing one to flip over, before colliding with plaintiff's car with so much force that it rendered plaintiff unconscious and caused her car to hit the vehicle directly in front of hers, essentially folding plaintiff's car up like an accordion." (Id. ¶ 49). Vance County Emergency Medical Services transported plaintiff to Maria Parham Medical Center, where it was determined that plaintiff suffered a stroke from the collision. (Id. ¶ 56). Plaintiff continues to suffer from serious and permanent bodily injuries caused by the crash. (Id. ¶ 58).

Following the collision, defendant Carter admitted to investigating law enforcement that he had been driving while fatigued in violation of the FMCSA's safety regulations. (Id. ¶ 51). He

3

received traffic citations for reckless driving in violation of North Carolina General Statute § 20-140 and failure to reduce speed in violation of North Carolina General Statute § 20-141. (Id. ¶ 52).

B.   The Department of Justice Investigation

In or around 2015, the United States Department of Justice ("DOJ") launched an investigation into whether defendants Gerald, Garland, Shaun, Kozel, BBT, and BBH violated the FMCSA's safety regulations. (Id. ¶ 72). Following the investigation, on March 16, 2017, a federal grand jury sitting in the Western District of Virginia returned a 126 count-indictment against defendants Gerald, Garland, Shaun, Kozel, BBT, and BBH. (Id. ¶ 75). Among other charges, defendants were indicted for 1) aiding, abetting, encouraging, requiring, and permitting defendant BBT's drivers to operate commercial motor vehicles while fatigued and 2) submitting falsified and altered records to the DOJ, including Driver Records of Duty Status, in order to impede, obstruct, and influence the proper administration of the DOJ investigation. (Id. ¶¶ 76-77).

Defendant Carter is allegedly among the drivers identified as having falsified his Driver Record of Duty Status log to feign compliance with the FMCSA regulations. (Id. ¶ 78). Pursuant to written plea agreement, moving defendants pleaded guilty to knowingly and willfully conspiring to violate FMCSA safety regulations, including Hours of Service regulations designed to prevent drivers from driving while fatigued, from 1999 to 2017. (Id. ¶ 82; Pl. Ex. 9 (DE 1-9) at 2).[1]

**COURT'S DISCUSSION**

A.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.    Analysis

    1.    Piercing the Corporate Veil

Moving defendants seek dismissal of plaintiff's claims against them, asserting that plaintiff failed to plead facts sufficient to pierce the corporate veil such that they may be individually liable to plaintiff for the claims alleged.

As an initial matter, the court must determine what state's law to apply in determining whether to pierce the corporate veil. Here, the court's jurisdiction is based upon diversity of citizenship; therefore, the court must "apply the substantive law of the state in which it sits, including the state's choice of law rules." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599–600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). As such, the court must apply North Carolina's choice of law rules, as North Carolina is the forum state.

However, neither the North Carolina Supreme Court nor the North Carolina Court of Appeals have conclusively determined whether North Carolina law or the law of an entity's state of incorporation applies to veil piercing issues. See, e.g., Strategic Outsourcing, Inc. v. Stacks,

176 N.C. App. 247, 252–53, (2006). Without such guidance, the court must predict how the North Carolina Supreme Court would rule if presented with this issue. See Private Mort. Inv. Servs., Inc. v. Hotel and Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002).

Several district courts in the Fourth Circuit, including this one, previously have concluded that the North Carolina Supreme Court would likely apply the law of the state of incorporation to the issue of veil piercing. See SMD Software, Inc. v. EMove, Inc., No. 5:08-CV-403-FL, 2013 WL 12167730, at *8 (E.D.N.C. April 30, 2013) (collecting federal cases recognizing the same). In reaching that conclusion, one court noted that since a "state's primary purpose for permitting corporations to be formed is allow for limited liability . . . the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 249 (M.D.N.C. 1995). Under this approach, the law of the defendant entities' state of incorporation, Virginia, would apply in determining whether to pierce the corporate veil.

In contrast, plaintiff argues North Carolina law applies, citing Brendle v. General Tire & Rubber Co., 505 F.2d 243 (4th Cir. 1969), for the proposition that North Carolina courts apply the law of the state where the injury occurred in personal injury cases. While North Carolina courts do follow that choice of law rule for tort claims, Brendle does not resolve the choice of law question here, because the issue of veil piercing was not before the court in Brendle. Plaintiff also relies on Bartels v. Saber Healthcare Group, LLC, 352 F. Supp. 3d 522, 528 (E.D.N.C. 2018), for support because the district court in that case applied North Carolina law instead of the law of the state of incorporation to a veil piercing issue. Importantly though, in Bartels, the court conceded that "North Carolina courts, whose law this Court must apply in determining choice of law issues, have not, however, ruled definitively on whether North Carolina law or the law of the state of

6

incorporation applies to this inquiry." Id. at 528. Where approaches remain varied, and the North Carolina Supreme Court has not addressed the issue, the court adheres to its prior ruling and declines to apply North Carolina law to the issue of veil piercing.[2]

Accordingly, turning to Virginia law, it is well established that "a corporation is a legal entity entirely separate and distinct from the shareholders and members who compose it." Cheatle, 234 Va. at 212. Likewise, "it is also axiomatic that when a corporation causes injury as a result of an unlawful action, it is the corporation that is directly liable for any judgment obtained against it by the injured party." Dana v. 313 Freemason, 266 Va. 491, 553 (2003). This principle "supports a vital economic policy underlying the whole corporate concept." Cheatle, 234 Va. at 212. As such, "[t]he decision to ignore the separate existence of a corporate entity and impose personal liability upon shareholders for debts of the corporation is an extraordinary act to be taken only when necessary to promote justice." Dana, 266 Va. at 500 (internal quotations omitted). Indeed, "[i]n Virginia, unlike in some states, the standards for veil piercing are very stringent, and piercing . . . is permitted only in the most egregious circumstances." C.F. Tr., Inc, 266 Va. at 12.

Under Virginia law, a plaintiff seeking to pierce the corporate veil bears the burden of establishing 1)"that the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally" and 2) "that the corporation was a device or sham

---

[2] North Carolina and Virginia courts impose similar requirements for piercing the corporate veil. Compare Glenn v. Wagner, 313 N.C. 450, 454-55 (1985) (requiring "1) control, not mere majority of complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and 2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff' legal rights; and 3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of" in order to pierce the corporate veil), with Cheatle v. Rudd's Swimming Pool Supply Co., Inc., 234 Va. 207, 212 (1987) (requiring 1) "that the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally" and 2) "that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime" in order to pierce the corporate veil). However, because the Virginia Supreme Court has pronounced "[i]n Virginia, unlike in some states, the standards for veil piercing are very stringent, and piercing . . . is permitted only in the most egregious circumstances," C.F. Tr., Inc, v. First Flight L.P., 266 Va. 3, 12 (2003), the court declines to treat the choice of law issue as immaterial.

used to disguise wrongs, obscure fraud, or conceal crime." Cheatle, 234 Va. at 212. Concerning the first prong, Virginia courts consider factors such as whether the individuals "commingled corporate and personal assets," "siphoned corporate assets into their own pockets," or "disregarded corporate formalities." Cheatle, 234 Va. at 213. Additionally, "initial capitalization of a corporation can be an indicator of whether a corporation was created and operated as a sham or as the alter ego for another corporation or person." O'Hazza v. Exec. Credit Corp., 246 Va. 111, 116 (1993).

Here, plaintiff's complaint is devoid of any facts suggesting that the defendant entities were the alter egos of moving defendants. Indeed, plaintiff fails to mention any of the relevant factors such as whether the moving defendants comingled personal assets with corporate assets, siphoned corporate assets into their own pockets, failed to observe corporate formalities, or undercapitalized the corporation at its inception. Instead, plaintiff merely states in a conclusory fashion that the moving defendants "maintained exclusive ownership and control over the finances, policy and business practices" of defendant entities Cross Keys, BBT, BBH, Beam Bros. LLC #1, and Beam Bros. LLC #2 and that "each such entity was the alter ego or mere instrumentality of at least on other entity in said chain, and subject to said entity's domination and control." (Pl. Resp. (DE 31) at 9-10). However, by reciting labels such as "alter ego," "mere instrumentality," "domination and control," plaintiff does not carry the heavy burden necessary to pierce the corporate veil. See Iqbal, 556 U.S. at 677 (noting that a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action" and relies upon "naked assertions devoid of further factual enhancement" is insufficient).

Likewise, plaintiff's allegations that defendants Gerald and Garland owned defendant BBH, and defendant BBH owned defendant BBT does not establish that these defendants were the

8

alter egos of each other. See United States v. Bestfoods, 524 U.S. 51, 61-62 (1998) ("[A] parent corporation (so-called because of control through another corporation's stock) is not liable for the acts of its subsidiaries. Thus, it is hornbook law that the exercise of the control which stock ownership gives to the stockholders . . . will not create liability. . . "). In the same vein, plaintiff's allegation that the moving defendants served as corporate officers for defendant BBT and managed its finances and business practices as part of their jobs does not establish that the moving defendants were alter egos of the defendant BBT. See S.E.C. v. Woolf, 835 F. Supp. 2d 111, 124 ("That the individual defendants were officers of the corporate defendants is insufficient to support an alter ego theory . . .")(citing Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc., 974 F.2d 545, 548 (4th Cir.1992)). In fact, one court suggested that, unlike shareholders, corporate officers and directors cannot be reached through veil piercing. See In re Vinales, 268 B.R. 749, 756 (2001) ("The court is not aware of the veil piercing doctrine being applied to reach officers of a corporation. Indeed, the reported cases in Virginia disregard the corporate fiction to reach shareholders.").

In essence, plaintiff relies on moving defendant's plea agreements, wherein they admitted they encouraged defendant BBT's drivers to violate FMCSA safety regulations, in order to pierce the corporate veil. While these facts suggest moving defendants committed a crime, which is relevant to the second prong of the veil piercing test, they fail to establish that the moving defendants were alter egos of the defendant entities. Accordingly, the court declines to pierce the corporate veil.

2.  Vicarious Liability

Alleging that defendant Carter was an employee of defendant BBT, see (Pl. Compl. (DE 1) ¶ 18), and the moving defendants served as defendant BBT's corporate officers, see (Pl. Compl.

(DE 1) ¶¶ 20-26), plaintiff seeks to hold moving defendants vicariously liable for defendant Carter's alleged negligence. Plaintiff argues that the moving defendants created an employment relationship with defendant Carter by encouraging, permitting, and requiring him to violate FMCSA safety regulations. (See Pl. Resp. (DE 31) at 15). However, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." Meyer v. Holley, 537 U.S. 280, 286 (2003); see also Oberlin Capital, L.P. v. Slavin, 147 N.C. App. 52, 57 (2001) ("The general rule is that "a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents.") (internal quotations omitted).[3] Accordingly, plaintiff's vicarious liability claims against the moving defendants must be dismissed.

3. Negligence

Although corporate officers and directors cannot be held vicariously liable for a corporation's torts, "a director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation." Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 517 F.2d 1141, 1144 (4th Cir. 1975); see also Palomino Mills v. Davidson Mills Corp., 230 N.C. 286, 292 (1949) ("[C]orporate officers are liable for their torts, although committed when acting officially; and that the officers are liable for their torts regardless of whether the corporation is liable. But that in order to make an officer liable for the wrong of the corporation, he must be a participant in the wrongful act.") (internal quotations omitted); United Artists Records, Inc. v. Eastern Tape Corp., 19 N.C. App. 207, 215 (1973) ("[A director, officer,

---

[3] As mentioned above, North Carolina courts apply the law of the state where the injury occurred to tort claims. See Boudreau v. Baughman, 322 N.C. 331, 335 (1988). Since the injury in this case occurred in North Carolina, North Carolina law applies to plaintiff's tort claims.

or agent of a corporation] is liable in damages for injuries suffered by third persons because of his own torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable. He cannot escape liability on the ground that in committing the tort he acted as a director, officer, or agent of the corporation, or on the ground that the corporation may also be liable.").

Having determined that a corporate director or officer can be liable for his own torts, the court turns to the requirements for establishing negligence under North Carolina law. "In order to prevail in a negligence action, plaintiffs must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 706 (1995) (citing Lamm v. Bissette Realty, Inc., 327 N.C. 412 (1990)). Here, plaintiff alleges moving defendants 1) owed a duty to the driving public, as officers of defendant BBT, to ensure that defendant BBT's drivers complied with FMSCA regulations; 2) breached that duty by encouraging condoning, permitting, causing, and requiring drivers of defendant BBT, including defendant Carter, to operate commercial motor vehicles while impaired by fatigue; 3) their breach proximately caused the collision between plaintiff and defendant Carter's vehicles; and 4) plaintiff suffered severe and permanent injuries as a result of the collision. In support, plaintiff relies on plea agreements, and the attendant statements of facts, wherein the moving defendants admitted to violating FMCSA Safety regulations by encouraging, permitting, causing, or requiring drivers for defendant BBT to make trips in violation of FMCSA safety regulations, including Hours of Service regulations, from 1999 to 2017. Moreover, relying on the indictment, which states that defendant BBT's driver "JC" altered his Driver Record of Duty Status to feign compliance with the FMCSA's safety regulations, plaintiff alleges defendant Carter, whose first name is James, drove in violation of the FMCSA safety regulations. Finally, plaintiff relies on defendant Carter's

11

statement to the investigating officer that he was driving while fatigued in violation of the FMCSA safety regulations.

Moving defendants argue that plaintiff fails to state a claim for negligence because she "fails to plead any fact specifically related this accident of June 19, 2016." (Def. Mem. (DE 27) at 5). However, moving defendants' plea agreements and attendant statement of facts, which plaintiff attached to her complaint, indicate that they encouraged and required defendant BBT's drivers to drive in violation of FMCSA safety regulations from 1999 to 2017. Where the collision in this case occurred within that time period, and where defendant Carter admitted to driving while fatigued at the time of the collision, plaintiff's allegations permit the reasonable inference that the moving defendants are liable to plaintiff. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); see also In re PEC Sol., Inc. Sec. Litig., 418 F. 3d 379, 387 (4th Cir. 2005) ("[O]n a motion to dismiss we assume all the well-pled allegations of plaintiffs as true and draw reasonable inferences in their favor . . ." ). As such, plaintiff has sufficiently stated a claim for negligence against the moving defendants, and their motion to dismiss must be denied in this part.

4. Negligent Retention

Plaintiff brings negligent retention claims against the moving defendants. Under North Carolina law, an employer can be held liable for negligent retention if its employee injured a third party, and the employer knows or had reason to know of the employee's incompetency prior to injury. See Braswell v. Braswell, 330 N.C. 363, 373 (1991); see also Smith v. Privette, 128 N.C. App. 490, 494 (1998). Here, however, defendant's employer, if anyone, would be defendant BBT, not the moving defendants, who were defendant BBT's officers. See Meyer, 537 U.S. at 286 ("[I]n

the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer. . ."). And under North Carolina law, "negligent supervision and retention claims are actionable only against the employer, not the individual supervisors or co-employees." Ostwalt v. Charlotte-Mecklenburg Bd. of Educ., 786 F. Supp. 887, 1002 (M.D.N.C. Mar. 31, 2011) (citing Foster v. Crandell, 181 N.C. App. 152, 170-71 (2007)). Accordingly, plaintiff fails to state a claim for negligent retention against the moving defendants, and such claim must be dismissed.

5.  Negligent Entrustment

Under North Carolina law, "negligent entrustment occurs when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver who is likely to cause injury to other in its use." Swicegood v. Cooper, 341 N.C. 178, 180 (1995) (internal quotations omitted). Consequently, "as a result of his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence." Id.

Here, plaintiff alleges defendant Cross Keys owned the Volvo that defendant Carter drove on the day of the collision. (See Pl. Compl. (DE 1) ¶¶ 40-41). Since moving defendants did not own the Volvo, they could not have entrusted him with it. See Swicegood, 341 N.C. at 180, ("negligent entrustment occurs when the owner of an automobile entrusts its operation . . .") (emphasis added); see also Hill ex rel. Hill v. West, 189 N.C. App. 189, 193 ("[B]ecause Defendants . . . did not own the vehicle allegedly to have been entrusted to Teresa Henson West, summary judgment as to them was properly granted."). As such, plaintiff's negligent entrustment claims against moving defendants must be dismissed.

6.  Civil Conspiracy

The elements of a civil conspiracy claim include: 1) a conspiracy, 2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and 3) injury as a result of that conspiracy. Krawiec v. Manly, 370 N.C. 602, 614 (2018). Defendants argue plaintiff fails to establish the first element of the claim, conspiracy, due to the intracorporate immunity doctrine. This doctrine "recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 352-53 (4th Cir. 2013); see also Seguro-Suarez by and through Connette v. Key Risk Ins. Co., —N.C. App. —, 819 S.E.2d 741, 754-55 (2018) ("An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself.") (internal quotations omitted). There are, however, two exceptions to the intracorporate conspiracy doctrine. First, it does not apply "where a conspirator possesses a personal stake independent of his relationship to the corporation." Painter's Mill Grille, 716 F.3d at 353. Additionally, it is inapplicable "where the agent's acts were not authorized by the corporation." Id.

Here, plaintiff fails to allege moving defendants conspired with anyone outside of any employment or agency relationship with defendant BBT, implicating the intracorporate conspiracy doctrine. Moreover, since plaintiff alleges the moving defendants were acting within the scope of their employment and conspired to violate the FMCSA safety regulations because "they valued corporate profits over the safety of the driving public[,]" (see Pl. Compl. (DE 1) ¶ 110), the doctrine's exceptions are inapplicable. As such, plaintiff fails to state a claim for civil conspiracy against the moving defendants, and this claim must be dismissed.

7. Punitive Damages

Plaintiff brings claims for punitive damages against moving defendants, alleging they engaged in willful or wanton conduct. Under North Carolina law, "[p]unitive damages shall not

be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another." N.C. Gen. Stat. § 1D-15(c) (2017). Instead, "[p]unitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages." Id. Accordingly, in the case of a corporation, "[p]unitive damages may be awarded against a person only if . . . the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Id.

To recover punitive damages, a plaintiff must prove, by "clear and convincing evidence," that "the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) fraud, (2) malice, or (3) willful or wanton conduct." Id. §§ 1D-15(a)-(b). The aggravating factor alleged here, willful or wanton conduct, is defined under North Carolina law as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7); see also Brewer v. Harris, 279 N.C. 288, 296 (1971) ("An act is done willfully when it is done purposely and deliberately in violation of law . . . [a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.").

Here, plaintiff alleges moving defendants engaged in willful and wanton conduct by encouraging and requiring defendant BBT's drivers to drive in violation of FMCSA safety regulations. In support, she attaches the moving defendants' plea agreements and attendant statement of facts, wherein they admitted to "knowingly" and "willfully" conspiring to violate the FMSCA safety regulations. (See Pl. Ex. 4 (DE 1-4) at 2). Moreover, plaintiff cites fines allegedly

levied against defendant BBT in 2010, arguing these fines did not deter moving defendants from committing FMCSA violations because they valued corporate profits over the safety of the driving public. Taking the allegations in plaintiff's complaint as true, plaintiff has sufficiently alleged that moving defendants engaged in wanton and willful conduct in order to state a claim for punitive damages. As such, moving defendants' motion to dismiss must be denied in this part.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss (DE 26) as follows:

1) Plaintiff's vicarious liability, negligent entrustment, and negligent retention claims against defendants Garland, Gerald, Shaun, and Kozel are DISMISSED WITH PREJUDICE.

2) Plaintiff's civil conspiracy claim against defendants Garland, Gerald, Shaun, and Kozel is DISMISSED WITHOUT PREJUDICE.

2) Plaintiff's punitive damages and negligence claims against defendants Garland, Gerald, Shaun, and Kozel are ALLOWED to proceed.

SO ORDERED, this the 31st day of January, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge